Robert G. PITTMAN, Sr., Plaintiff in Error,

v.

AMERICAN EXCHANGE BANK, Defendant in Error.

No. 41389.

Supreme Court of Oklahoma.

April 30, 1968.

Paul V. McGivern, Jr., E. E. Davies, Tulsa, for plaintiff in error.

Martin, Logan, Moyers, Martin & Conway, by Jack H. Santee, Tulsa, for defendant in error.

BLACKBIRD, Justice.

This appeal involves a replevin action instituted by defendant in error, a Collinsville Bank, hereinafter referred to as "plaintiff" and/or "Bank", against plaintiff in error, hereinafter referred to as "defendant". The property involved was a 1960–model International pickup truck (sometimes erroneously referred to as a 1961–model) sold by a Tulsa branch of the International Harvester Company to one, Richard P. Dixon, then of Owasso, Oklahoma, in November or December, 1960.

Thereafter, Dixon executed and delivered to the plaintiff Bank his promissory note dated May 10, 1962, for $1232.00 to be paid in 24 equal monthly installments of $51.33 each, due on the 10th day of each month thereafter, beginning June 10th of that year. Dixon executed and delivered the chattel mortgage on the subject truck the same date to secure payment of said note. After describing the truck, the mortgage stated it was then "located" and would be "kept in Owasso", and contained the following very common provision:

"* * *

"(2) That so long as the possession of said property is permitted to remain with the mortgagor, the same shall not be sold, mortgaged or removed from the place above named without the written consent of the Bank, and that mortgagor will use the utmost diligence and care to preserve said property from waste or destruction and have the same forthcoming for delivery to the Bank, or purchaser, in as good condition as the same now is, unavoidable loss alone excepted; * *."

The above described chattel mortgage was filed in the office of the County Clerk of Tulsa County, on May 25, 1962. Thereafter Dixon moved to Delaware County and

sold the truck to defendant there on August 7, 1962.

After Dixon's payment of the monthly installment due on his note September 10, 1962, no further payments were made on it. Thereafter, when plaintiff learned that Dixon had taken the truck out of Tulsa County and sold it to defendant, it contacted him, but defendant did not relinquish the truck's possession, nor pay anything on the mortgage indebtedness.

Plaintiff thereafter instituted the present action in February, 1964. In the petition plaintiff filed in the action, it alleged, among other things, that the sum of $1026.68, plus interest from October 10, 1962, at the rate of 10% per annum was due on the note; that plaintiff had demanded, but had been refused, possession of the truck by defendant, and was entitled to its immediate possession. Plaintiff further alleged that it had been damaged by defendant's "wrongful and unlawful retention" of the truck; that the truck's value, as of January 31, 1963, was $1500.00 and that its "present value" was only $1245.00. Plaintiff prayed for an order of the court requiring defendant to deliver to it the truck, or its value, together with damages for its "unlawful retention" from February 1, 1963, to March, 1964, and for its costs, and other appropriate relief.

In his answer to said petition, defendant admitted that his purchase of the truck in Delaware County occurred on the above date, but alleged, among other things in substance, that Dixon was then a resident of said County, and further alleged that the truck had then been in said County more than 120 days, and had remained there, without plaintiff ever having filed its mortgage in said County; that defendant was an innocent purchaser of the truck for value, without notice of any encumbrance against it. Defendant further alleged that plaintiff notified him on or about January 31, 1963, that it had a mortgage on the truck, and demanded its possession, but failed and neglected to do anything further to obtain same until February ary, 1964, and that thereafter its claim against defendant for the truck's wrongful retention was barred, and plaintiff was estopped from claiming defendant had "wrongfully" retained it from January, 1963, to March, 1964. Defendant denied, in substance, that until plaintiff contacted him, he ever had any knowledge that Dixon had mortgaged the truck to plaintiff, and prayed that plaintiff take nothing by the action.

At the trial before the court in October, 1964 (trial by jury having been waived) plaintiff's Vice-President testified that he never gave Mr. Dixon permission to take the mortgaged truck out of Tulsa County; that, after Dixon ceased paying on the note, the witness started making inquiries at Owasso as to his whereabouts, and that of the truck; that Dixon's wife told him the truck "might have been sold" and he thereafter wrote the (Oklahoma Tax Commission's) Motor Vehicle Department and learned from it, in January, 1963, that the truck had been registered in the name of the defendant of Jay, Oklahoma, during November, 1962; that plaintiff then "checked" at Jay, and found that defendant was employed at Tulsa; that plaintiff, after writing several letters and making many unsuccessful telephone calls, was finally able to contact him, and defendant said he wanted to consult his attorney "to find out where I stood and he was to contact us"; that the average retail value of a 1961 model International Pickup Truck, according to the NADA Official Used Car Guide employed by plaintiff in establishing retail, and loan, values, during the period from July to October, 1962, was $1230.00.

Defendant testified that he has lived at Jay, Oklahoma, since 1956; that Richard P. Dixon was a member of the American Legion Post at Eucha, in the same County; that the witness believed he became a member there in January or February, 1962; that Dixon had the truck with him at this Legion Post when the witness contracted with him to buy it; that, when the witness bought it, he checked with the rec-

ords office in the court house at Jay "but they found no mortgage (on it)"; that, several months after he bought it, he received a call from plaintiff's "Mr. Flanagan", in January or February, 1963, stating that said Bank had a mortgage on the truck, and that "I could bring the truck in and turn it over to him"; that he construed this as a "demand"; that the witness told Flanagan "that I would see my attorney about it"; that the average retail value of a 1960 International B–100 series pickup truck, in October, 1964, as set forth in the "NADA Used Car Guide, Southwestern Division", is $890.00.

At the close of the evidence, the court announced his decision for plaintiff, and, in the judgment thereupon rendered, he specifically found that, at the time plaintiff filed its mortgage of record, the truck was located in Tulsa County; "that said filing constituted notice of such encumbrance to defendant, who (thereafter) purchased the truck in Delaware County on August 7, 1962", on which date, defendant converted it; that by reason of Richard P. Dixon's default, under the terms of the note and mortgage and "46 O.S.1961, sec. 66", plaintiff was entitled to the truck's possession. The journal entry of said judgment recited a finding and conclusion by the court that the balance of the principal amount due on Dixon's note, secured by the mortgage, was $1026.68; that interest thereon, at the rate of 10% per annum from "October 10, 1962", was also due; and that the note provided for an attorney's fee in an amount equal to 10% "of the outstanding balance of the principal and interest due on said note, or the sum of $123.20 as of the date of this judgment." The judgment contained the further finding and conclusion that the value of the truck, on the date of its conversion, was "approximately $1230.00". In accord with the findings and conclusions set forth therein, the decretal part of the journal entry of judgment recited:

"IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED BY THIS COURT that plaintiff take judg-

ment for the possession of the International Pickup Truck, but in the event said truck is not in substantially the same condition and has substantially the same value as it had on August 7, 1962, then plaintiff is awarded judgment for $1,230.00 for the value of the truck as of the date of conversion, *plus interest thereon at the rate of 6% per annum from October 10, 1962, as damages for the wrongful detention* of the truck; provided, however, that plaintiff shall in no event recover more than $1,026.68, the outstanding principal balance of the Dixon note, plus interest thereon from October 10, 1962, at the rate of 10% per annum until paid, plus an attorney's fee in the amount of 10% of the outstanding balance of principal and interest." (Emphasis added.)

After the overruling of his motion for a new trial, defendant perfected the present appeal.

Defendant sets forth his arguments for reversal under four propositions, but they will all be referred to, and dealt with, as the following contentions:

(1) That the truck was situated in Delaware County at the time Dixon sold it to defendant, and at all times thereafter, and there was no proof that *defendant* removed it from Tulsa County. There being no evidence of any "wrongful act" *on the part of the defendant*, plaintiff failed to discharge its burden of proving a conversion of the truck.

(2) The amount of plaintiff's award for defendant's asserted conversion of the truck was in error, because defendant "was not put on actual notice" that plaintiff claimed any right or interest in it until about February of 1964; and the court erred in treating plaintiff's asserted damages from defendant's wrongful detention of the truck, as if this commenced on October 10, 1962.

▮▮▮▮ As to (1) above, defense counsel represents that "the testimony clearly shows that the property (truck) was located in Delaware County at the time of the

sale * * *". We do not agree. While, as hereinbefore shown, the defendant testified that Richard P. Dixon had the truck with him at the American Legion Post at Eucha—which is in Delaware County—at the time he "contracted to" buy it from Dixon, Mrs. Marguerite Sheldon, the tag agent at Owasso, in Tulsa County, testified that Dixon was the former tag agent there; that she worked for him (as such) from "in October '60" until October, 1962; that she had taken care of Dixon's records concerning the truck for his wife; that the truck was in Owasso during May, 1962; and that she knew this, because she drove it during that month. When asked how long, after that, the truck stayed in Owasso, she testified: "Probably a month, that I know of." Thus, it will be seen that, under Tit. 46 O.S.1961, § 57, Tulsa County was the proper County in which to file plaintiff's chattel mortgage, date May 10, 1962. When so filed, it operated, under § 58 of said Title, as notice of plaintiff's mortgage lien on the truck, to all subsequent purchasers of it, for a period of 120 days thereafter. Thus, when defendant purchased the truck from Dixon within that 120-day period, as he admittedly did, on August 7, 1962, plaintiff's mortgage lien was still in effect and validly encumbered the truck. With the constructive notice defendant had of plaintiff's chattel mortgage, by reason of the operation of this law, it is immaterial that he had no actual notice of it. Defendant must have known the truck was originally sold in Tulsa County, for he testified that (when he obtained it from Dixon) "* * * the title showed the International Harvester as carrying a lien on the truck, and I called them long distance * * *". As far as the evidence reveals, however, defendant caused no examination to be made of the chattel mortgage records in the Tulsa County Clerk's office, and made no inquiry as to when the truck was moved from Tulsa County to Delaware County. Having purchased the truck within 120 days after plaintiff's chattel mortgage on it was filed of record in Tulsa County, he took it subject to plaintiff's chattel mortgage, whether he had actual notice of it, or not. The foregoing is dispositive of defendant's arguments under his propositions "III" and "IV".

As to defendant's argument, under his "PROPOSITION I", concerning lack of any proof as to his conversion of the truck, this Court has repeatedly held, since the early case of Bank of Commerce of Ralston v. Gaskill, 44 Okl. 728, 145 P. 1131, that when a third party purchases a chattel, covered by a mortgage like the one here involved, with notice of said mortgage, and to the exclusion of the mortgagee's rights, he is guilty of conversion. Thus, defendant's admission that he purchased the truck within the afore-mentioned 120-day statutory period, established his conversion of it, without any proof that he knowingly, or with actual notice or knowledge, acted in violation, or derogation of plaintiff's rights under its chattel mortgage.

In our opinion, the above disposes of all of defendant's arguments except those in which he complains of error in the date from which damages were assessed against him in the form of interest at the rate of 6% per annum on the truck's value from October 10, 1962. Since the record shows that, at the trial, plaintiff, in effect, waived any damages, to which it might have been entitled, prior to the date of its demand upon defendant to return the truck (which date was alleged in its petition to be "January 31, 1963") and, in its brief, plaintiff has confessed error in that part of the journal entry of the trial court's judgment purporting to assess its damages, on account of the truck's "wrongful detention" at the rate of 6% per annum from "October 10, 1962", instead of: January 31, 1963, we dispense with any further consideration of the matter, by recognizing that the journal entry does not reflect the true, and intended, judgment of the trial court.

In accord with the foregoing, that judgment is hereby affirmed, and this cause is

remanded to said court with directions to correct the journal entry thereof, by deleting the date of "October 10, 1962" in its provisions with reference to 6% interest, and inserting in lieu thereof the date of: January 31, 1963.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BERRY,

HODGES and LAVENDER, JJ., concur.